**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Andrew Koteles** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (If known) | **17-23972** |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

Official Form 106I

# Schedule I: Your Income                                   12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| Occupation | | **Auto Mechanic** | **Disabled** |
| Employer's name | | **Self-Employed** | |
| Employer's address | | **6231 State Route #88<br>Finleyville, PA 15332** | |
| How long employed there? | | **28 Years** | |

## Part 2:    Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions).  If not paid monthly, calculate what the monthly wage would be. | 2. $ _____ **0.00** | $ _____ **0.00** |
| 3. | Estimate and list monthly overtime pay. | 3. +$ _____ **0.00** | +$ _____ **0.00** |
| 4. | Calculate gross Income.  Add line 2 + line 3. | 4. $ _____ **0.00** | $ _____ **0.00** |

Exhibit "A", consisting of 4 pages

Respondent's Exhibits, page 1

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|

Debtor 1 **Andrew Koteles**    Case number (*if known*) **17-23972**

|  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here | 4. | $ 0.00 | $ 0.00 |
| 5. | List all payroll deductions: | | | |
| | 5a. Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ 0.00 |
| | 5b. Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| | 5c. Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ 0.00 |
| | 5d. Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| | 5e. Insurance | 5e. | $ 0.00 | $ 0.00 |
| | 5f. Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| | 5g. Union dues | 5g. | $ 0.00 | $ 0.00 |
| | 5h. Other deductions. Specify: _____ | 5h.+ | $ 0.00 | + $ 0.00 |
| 6. | Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 0.00 | $ 0.00 |
| 7. | Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. | $ 0.00 | $ 0.00 |
| 8. | List all other income regularly received: | | | |
| | 8a. Net income from rental property and from operating a business, profession, or farm<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 7,512.09 | $ 0.00 |
| | 8b. Interest and dividends | 8b. | $ 0.00 | $ 0.00 |
| | 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| | 8d. Unemployment compensation | 8d. | $ 0.00 | $ 0.00 |
| | 8e. Social Security | 8e. | $ 0.00 | $ 0.00 |
| | 8f. Other government assistance that you regularly receive<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: **Social Security Disability** | 8f. | $ 0.00 | $ 1,108.00 |
| | 8g. Pension or retirement income | 8g. | $ 0.00 | $ 0.00 |
| | 8h. Other monthly income. Specify: _____ | 8h.+ | $ 0.00 | + $ 0.00 |
| 9. | Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 7,512.09 | $ 1,108.00 |
| 10. | Calculate monthly income. Add line 7 + line 9.<br>Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 7,512.09 + $ 1,108.00 = | $ 8,620.09 |
| 11. | State all other regular contributions to the expenses that you list in *Schedule J.*<br>Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.<br>Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*<br>Specify: | 11. | +$ | 0.00 |
| 12. | Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.<br>Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data, if it applies* | 12. | $ | 8,620.09<br>**Combined monthly income** |
| 13. | Do you expect an increase or decrease within the year after you file this form? | | | |
| | ■ No. | | | |
| | ☐ Yes. Explain: _____ | | | |

Exhibit "A", consisting of
4 pages

Respondent's Exhibits, page 2

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Andrew Koteles** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (If known) | **17-23972** |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J

# Schedule J: Your Expenses                                                                 12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Your Household |
|---|---|

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

       ☐ No
       ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**  ■ No

   Do not list Debtor 1 and Debtor 2.   ☐ Yes.  Fill out this information for each dependent..............

   Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No    ☐ Yes |
| | | ☐ No    ☐ Yes |
| | | ☐ No    ☐ Yes |
| | | ☐ No    ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   ■ No   ☐ Yes

| Part 2: | Estimate Your Ongoing Monthly Expenses |
|---|---|

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | **Your expenses** |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.          4. $ _____ 0.00

   **If not included in line 4:**

   4a. Real estate taxes                                                          4a. $ _____ 219.47
   4b. Property, homeowner's, or renter's insurance                              4b. $ _____ 50.00
   4c. Home maintenance, repair, and upkeep expenses                             4c. $ _____ 35.00
   4d. Homeowner's association or condominium dues                               4d. $ _____ 0.00

5. **Additional mortgage payments for your residence,** such as home equity loans   5. $ _____ 0.00

Exhibit "A", consisting of
4 pages

Respondent's Exhibits, page 3

| Debtor 1 | **Andrew Koteles** | | Case number (if known) | **17-23972** |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a.    Electricity, heat, natural gas | | 6a. $ | **318.00** |
| | 6b.    Water, sewer, garbage collection | | 6b. $ | **45.00** |
| | 6c.    Telephone, cell phone, Internet, satellite, and cable services | | 6c. $ | **146.00** |
| | 6d.    Other. Specify: | | 6d. $ | **0.00** |
| 7. | **Food and housekeeping supplies** | | 7. $ | **609.00** |
| 8. | **Childcare and children's education costs** | | 8. $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | **25.00** |
| 10. | **Personal care products and services** | | 10. $ | **35.00** |
| 11. | **Medical and dental expenses** | | 11. $ | **140.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. | | | |
| | Do not include car payments. | | 12. $ | **409.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | **85.00** |
| 14. | **Charitable contributions and religious donations** | | 14. $ | **0.00** |
| 15. | **Insurance.** | | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a.    Life insurance | | 15a. $ | **28.00** |
| | 15b.    Health insurance | | 15b. $ | **430.00** |
| | 15c.    Vehicle insurance | | 15c. $ | **126.00** |
| | 15d.    Other insurance. Specify: | | 15d. $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. | | | |
| | Specify:    **Per Capita Tax** | | 16. $ | **36.00** |
| 17. | **Installment or lease payments:** | | | |
| | 17a.    Car payments for Vehicle 1 | | 17a. $ | **0.00** |
| | 17b.    Car payments for Vehicle 2 | | 17b. $ | **0.00** |
| | 17c.    Other. Specify:    **Rent to own payment for Commercial Garage** | | 17c. $ | **3,500.00** |
| | 17d.    Other. Specify: | | 17d. $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 106I).** | | 18. $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** | | 19. $ | **0.00** |
| | Specify: | | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | | |
| | 20a.    Mortgages on other property | | 20a. $ | **0.00** |
| | 20b.    Real estate taxes | | 20b. $ | **0.00** |
| | 20c.    Property, homeowner's, or renter's insurance | | 20c. $ | **40.00** |
| | 20d.    Maintenance, repair, and upkeep expenses | | 20d. $ | **0.00** |
| | 20e.    Homeowner's association or condominium dues | | 20e. $ | **0.00** |
| 21. | **Other:** Specify:    **Miscellaneous** | | 21. +$ | **55.00** |

| | | | | |
|---|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | **6,331.47** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | | $ | **6,331.47** |

| | | | | |
|---|---|---|---|---|
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | | 23a. $ | **8,620.09** |
| | 23b. Copy your monthly expenses from line 22c above. | | 23b. -$ | **6,331.47** |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | | 23c. $ | **2,288.62** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

□ Yes.    Explain here:

Exhibit "A", consisting of
4 pages

Respondent's Exhibits, page 4

**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

---

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Name of the current creditor (the person or entity to be paid for this claim) _____

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name _____ | Name _____ |
| Number        Street | Number        Street |
| City        State        ZIP Code | City        State        ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
         MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

---

Exhibit "B", consisting of
23 pages

Respondent's Exhibits, page 5

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** **Do you have any number you use to identify the debtor?**

☐ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7.** **How much is the claim?**    $_____. **Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9.** **Is all or part of the claim secured?**

☐ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**  _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                        $_____

**Amount of the claim that is secured:**      $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10.** **Is this claim based on a lease?**

☐ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11.** **Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property: _____

Exhibit "B", consisting of
23 pages

Respondent's Exhibits, page 6

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name _____
First name     Middle name     Last name

Title _____

Company _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address _____
Number     Street

_____
City     State     ZIP Code

Contact phone _____     Email _____

Exhibit "B", consisting of 23 pages

Respondent's Exhibits, page 7

# UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:                              :    Bankruptcy Case No. 17-23972 JAD
                                    :
ANDREW KOTELES,                     :    Chapter 13
                                    :
        Debtor.                     :

## PROOF OF CLAIM ITEMIZATION

Pursuant to Bankruptcy Rule 3001(c)(2)(A), Creditors Steve and Linda Levandosky make the following itemization:

2018 Past due …………………………$18,500.00 (November - March)

2018 accelerated………………………$33,300.00 (April-December)

2019 accelerated………………………$44,400.00 (12 Months)

2020 accelerated………………………$44,400.00 (12 Months)

2021 accelerated………………………$44,400.00 (12 Months)

2022 accelerated………………………$44,400.00 (12 Months)

**Subtotal………………………..$229,400.00**

2018 Late fees ……………………………$125. 00 (November - March)

**Subtotal………………………..$229.525.00**

Costs/Fees ……………………………$33,459.29 (costs and fees to obtain two judgments including appeal by Debtor)

**TOTAL………………………..$262,984.29**

## ARTICLE OF AGREEMENT

**THIS AGREEMENT**, made this *6* day of *NOV*, 2007.

BY AND BETWEEN

**STEVE and LINDA LEVANDOSKY,** husband and wife, of P. O. Box 6, Finleyville, Washington

County, Pennsylvania 15332, owner of the hereinafter described **"Premises"**, and hereinafter referred

to as the **"Seller"**,

A

N

D

**ANDREW KOTELES,** an individual, of 130 Demar Boulevard, Canonsburg, Washington County,

Pennsylvania 15317 and **CRAIG DEAN KOTELES**, an individual, of 130 Demar Boulevard,

Canonsburg, Washington County, Pennsylvania 15317, hereinafter referred to as the **"Buyer"**, in

consideration of the mutual covenants contained herein, with the intent to be legally bound.

    1. Buyer desires to purchase from Seller:  ALL that certain lot of ground situate in

Union Township, Washington County, Pennsylvania, being Lot No. 102 in Daugherty Plan of Lots

and recorded in Plan Book Volume 20, page 773, in the Recorder's Office of Washington County,

Pennsylvania, more particularly  bounded and described as follows:

    BEGINNING at a point on a concrete road known as Pennsylvania Route 88 which

point is South 78° 10' East, a distance of 410.40 feet from the intersection of said concrete road and

Lot Number 2 in the Abel Plan of Lots recorded in the Recorder of Deeds Office of Washington

County, in Plan Book Volume 20, Page 670 thence from said point of beginning along the dividing

line of property of Troy Vignoli, being Lot Number 104 in the Daugherty Plan of Lots South 11° 50'

00" West, 400.00 feet to a point thence along the dividing line of Lot 102 in the Daugherty Plan of

Lots, North 83° 52' 38" West, 100.50 feet to a point thence along the dividing line of Lot 102 in the

Daugherty Plan of Lots North 11° 50' 00" East, 410.00 feet to a point of the Pennsylvania Route 88

thence along the center line of said Pennsylvania Route 88, South 78° 10' East, a distance of 100.00

feet to a point, the place of beginning.

BEING designated as Tax Parcel I. D. No. 640-002-00-00-0009-06.

AS RECORDED on May 26, 1995 in Deed Book Volume 2695, Page 188, in the

Recorder of Deeds Office of and for Washington County, attached hereto and hereby made a part

hereof as Exhibit "A". TOGETHER with all building, improvements, easements, tenements,

appurtenances, hereditaments, fixtures, rights and privileges now or hereafter erected thereon

belonging thereto, hereinafter collectively called the "Premises".

Buyer desires to purchase the Premises by making installment payments and will

receive a deed to the Premises at a date subsequent to payment in full of installments, and fees, if

any, and as more fully set forth in Paragraph 3 of this Agreement. Seller is willing to sell the

premises upon such terms.

2. Seller hereby agrees to sell the Premises to Buyer, who agrees to purchase the

same, such sale and purchase to be upon the terms and conditions set forth in this Agreement.

3. The purchase price for the premises to be paid by the Buyer to Seller is in the

amount of Six Hundred Fifty Thousand ($650,000.00) Dollars, payable as follows:

A. The term of this Agreement is Fifteen (15) years, with the first payment of

Ten Thousand and 00/100 ($10,000.00) Dollars due on December 1, 2007,

second payment of Twenty Thousand and 00/100 ($20,000.00) Dollars due

on December 1, 2008, third payment of Twenty Thousand and 00/100

($20,000.00) Dollars due on December 1, 2009 and with monthly payments

Exhibit "B", consisting of
23 pages                                        2
                        Respondent's Exhibits, page 10

of Three Thousand Seven Hundred and 00/100 ($3,700.00) Dollars due on or before the 1st of each month until the final payment is made on December 1, 2022 in the amount of Three Thousand Seven Hundred and 00/100 ($3,700.00) Dollars.

B.    The Buyer shall owe the payments as specified above. Said payments shall be made payable to **"STEVE and LINDA LEVANDOSKY"** and mailed to **"P.O. Box 6, Finleyville, PA 15332"**.

C.    If any payment is not received by the Seller by the 11th day of the month for which the payment is due, the Buyer shall pay an additional Twenty-five and 00/100 ($25.00) Dollars for a late charge each month a payment is late.

4. The Buyer and Seller recognize that the real estate taxes shall remain in the name of the Seller during the entire period of this Agreement, however, it shall be the **duty of the Seller to provide said real estate tax to the Buyer IMMEDIATELY upon receipt of the same. It shall be the duty of the Buyer to pay said taxes upon receipt AT DISCOUNT or AT FACE and provide a photocopy of the receipt marked "PAID" to the Seller immediately**. The Seller warrants that the following real estates taxes have been paid:

    A. 2007 Washington County Tax
    B. 2007 Union Township
    C. 2007-2008 Ringgold School District

5. Seller shall, as of the date of the signing of this Agreement, give possession to the Buyer of the Premises and shall allow him the quiet enjoyment of the Premises. The Seller shall, for the entire period of this Agreement, be entitled to any sums due and payable for rent in the property. The Seller warrants that said property is currently not leased to any third party.

6. The Buyer and Seller anticipate that on or about December 1, 2022, the conveyance of the title of the Premises shall be made to the Buyer by the Seller. Said title being granted by General Warranty Deed.

7. At the time of the final closing in regards to the property, all transfer taxes imposed by any governmental body shall be borne equally by the Buyer and the Seller ($6,500.00/Buyer - $6,500.00/Seller - at current rate of 1% State and 1% Local Transfer Tax). The Seller shall be responsible for the preparation of the deed and for solving any problems affecting adversely the marketability of the title which may be discovered at the time of the closing, except for those problems created by the Buyer.

8. As the Buyer shall have possession of the property for the entire period of this Agreement, Buyer acknowledges that the property is purchased in "As Is" condition. As a result of the same, they shall have a duty of maintenance on the property and shall maintain it in as good as a condition as the property is obtained at the signing of this Agreement. Buyer shall do nothing which shall cause to come into question the title of the Seller and shall make no major alterations to the property without the written permission of the Seller. The Seller shall not unreasonably withhold permission for said alterations so long as said improvements do not decrease the value of the property.

9. Buyer has no authority to lease said premises without the written consent of Seller.

10. Buyer shall maintain liability insurance at the minimum amount of One Million Dollars naming Seller as beneficiary and agrees to indemnify and hold harmless the Seller from any and all causes of action, complaints, etc. that may result as an activity or no activity of the Buyer and provide proof of the same to Seller upon demand.

11. Buyer agrees to maintain property and fire insurance in the amount of Four Hundred Thousand Dollars naming Seller as beneficiary and provide proof of the same to Seller upon demand.

12. The Seller covenants and represents as the approval day of this Agreement, that no assessments for public improvements or any other municipal liens, liens from unpaid taxes, sewer charges or unpaid water charges, other than those current to the premises are owed.

13. The Premises involved shall be conveyed at the final settlement free and clear of liens, encumbrances and easements affecting adversely the marketability of the title. Should a problem in the title exist, then the Seller agrees to remedy the same at the time of the closing, except for those problems created by the Buyer.

14. Upon the signing of this Agreement, the risk of any loss or damages to the Premises, or liability as a result of personal injury, shall be upon the Buyer. The Buyer shall assume and be responsible for the maintenance of the Premises in good order and repaid and shall indemnify and hold the Seller harmless of and from any and all claims for work and labor done or materials furnished in connection with the maintenance and repairs of these Premises. No major improvements or alterations shall be made to the Premises without the prior written approval of the Seller, which approval shall not be unreasonably withheld. Buyer may insure his own interest in the property as they deems appropriate.

15. It is mutually agreed and understood that the conditions herein above set forth are the essence of this Agreement and that the breach of any of the said conditions on the part of the Buyer shall be a "Breach of Covenant or Agreement" within the terms of this Agreement and shall have the consequences elsewhere set forth in this Agreement.

Exhibit "B", consisting of
23 pages

Respondent's Exhibits, page 13

16.  It is hereby mutually agreed and understood that the Buyer shall not have the right to assign the within Agreement to any person, firm, corporation or any other entity or business entity.

17.  The Buyer and Seller hereto agree that this Agreement is the entire Agreement between them and that there are no verbal agreements, promises or understandings of any nature whatsoever between the Parties hereto except those specifically set forth in this Agreement and that neither of the Parties hereto have made any representations to the other upon which the other has relied upon for entering into this Agreement except such representations as are specifically set forth in this Agreement.

18.  If the Buyer defaults in payment, the Seller shall send a written notice of default and demand for payment as per Paragraph 18D.  If the default in payment or performance continues, the Seller may, at his election, use one or more of the following remedies in addition to or instead of any other remedies provided by law:

A.    Rescind this Agreement and retain all sums paid on account hereof as liquidated damages, in which case the Seller shall retain title to the real estate free and clear of any obligation or duty to the Buyer and the Buyer shall surrender this Agreement for cancellation;

B.    Eject the Buyer from said real estate, for which purpose the Buyer hereby authorize any attorney or any Court of Record to appear for the Buyer and confess judgment against the Buyer in an amicable action of ejectment, with immediate Writ of Possession of the real estate for damages, to include attorney's commission of 15% and costs, hereby waiving stay of execution, exemption and inquisition, with release of all errors;

Exhibit "B", consisting of
23 pages
6
Respondent's Exhibits, page 14

C.     Affirm this Agreement by delivery of deed to the Buyer, declare all sums due

hereunder to be forthwith due and payable, and cause judgment to be entered

therefore, for which purpose the Buyer hereby authorize and empower any

attorney or any Court of Record to appear for the Buyer and confess judgment

against the Buyer for the whole balance due, together with interest, attorney's

commission of 15% and costs, and hereby agree to immediate execution

thereon, waiving stay of execution, exemption and inquisition, with release

of all errors.

D.     Notwithstanding anything stated above, Seller shall not exercise any of the

aforesaid remedies, including Confession of Judgment, until Buyer remains

in default for thirty (30) days following a receipt of written notice of said

default.  However, Seller shall not be required to give more than two (2)

notices of default during any calendar year relative to the payment of monies

hereunder.  Notices to Buyer shall be sent to "**130 DeMar Boulevard,**

**Canonsburg, PA 15317**", or such other address as may be hereinafter

directed by Buyer.

19.   This Agreement shall extend to and benefit and bind the heirs, executors,

administrators, successors and assigns of the Parties hereto. The Parties agree that, should the Buyer

be deceased during the period of this Agreement, the payments shall be made by the Buyer's heirs,

successors or assigns.

20.   It is agreed that the cost for the preparation of this Agreement and Memorandum

shall be borne by the Seller.

21. A Memorandum of Agreement will be recorded in the Office of the Recorder of Deeds in and for Washington County at the Seller discretion.

**NOTICE:   THE USE OF ONE OR MORE COAL CLAUSES MAY OR MAY NOT BE REQUIRED BY LAW WITH THIS AGREEMENT.**

**IN WITNESS WHEREOF,** the said Parties to this Agreement have hereunto set their hands and seals the day and year first above written

WITNESS:                                    **SELLER:**

_____          _____
                                                          STEVE LEVANDOSKY

_____          _____
                                                          LINDA LEVANDOSKY

                                                          **BUYER:**

_____          _____
                                                          ANDREW KOTELES

_____          _____
                                                          CRAIG DEAN KOTELES

The following notices are set forth in the manner provided by Section 14 of "The Bituminous Mine Subsidence and Land Conservation Act."

The Grantor (hereinafter, whether one or more called "Grantor") does hereby certify that any structure now or hereafter erected on the land herein conveyed is not, to the best of the Grantors' knowledge, entitled to support from the underlying coal, anything to the contrary contained herein not withstanding.

WITNESS:

_____        _____
                                                STEVE LEVANDOSKY

_____        _____
                                                LINDA LEVANDOSKY

If the Grantor has not certified there is such a right of support, the Grantee should not sign the following:

NOTICE: Grantees (hereinafter, whether one or more, called "Grantee") hereby agrees that Grantee may not be obtaining the right of protection against subsidence resulting from coal mining operations and that the purchased property may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal.

WITNESS:

_____        _____
                                                ANDREW KOTELES

_____        _____
                                                CRAIG DEAN  KOTELES

NOTICE: THIS DOCUMENT MAY NOT SELL, CONVEY TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (This notice is set forth pursuant to Act No. 255, approved September 10, 1965.)

Commonwealth of Pennsylvania      )
                                        )    ss:

County of Washington               )

On this 6th day of November, 2007, before me, the undersigned officer, personally appeared, STEVE and LINDA LEVANDOSKY, husband and wife, know to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

Sworn to and Subscribed before me, this 6th day of November, 2007.

Billie Jo Pustovrh

Notary Public

My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Billie Jo Pustovrh, Notary Public
City of Washington, Washington County
My Commission Expires Dec. 6, 2009

Commonwealth of Pennsylvania      )
                                        )    ss:

County of Washington               )

On this 6th day of November, 2007, before me, the undersigned officer, personally appeared, ANDREW KOTELES, an individual, know to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

Sworn to and Subscribed before me, this 6th day of November, 2007.

Billie Jo Pustovrh

Notary Public

My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Billie Jo Pustovrh, Notary Public
City of Washington, Washington County
My Commission Expires Dec. 6, 2009

Exhibit "B", consisting of
23 pages                       10
Respondent's Exhibits, page 18

Commonwealth of Pennsylvania          )
                                       )     ss:
County of Washington                   )

On this 6th day of NOVEMBER, 2007, before me, the undersigned officer, personally appeared, CRAIG DEAN KOTELES, an individual, know to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

Sworn to and Subscribed before me, this 6th day of November, 2007.

_____
Notary Public

My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Billie Jo Pustovrh, Notary Public
City of Washington, Washington County
My Commission Expires Dec. 6, 2009

# THIS INDENTURE

Made the 26th day of May, in the year of our Lord One Thousand Nine
Hundred and Ninety Five.


BETWEEN

Kandi Vignoli, his wife
RICHARD TROY VIGNOLI AND H. CLEMENT DAUGHERTY AND RUBY DAUGHERTY


(hereinafter called "Grantors") and


STEVE LEVANDOSKY AND LINDA LEVANDOSKY, HIS WIFE


(hereinafter called "Grantees"):

WITNESSETH, that the said Grantors in consideration of

$100,000.00


paid to the Grantors by the Grantees do grant, bargain, sell and
convey unto the said Grantees, their heirs, successors, and
assigns,

640-002-00-00-0009-06

ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATED IN UNION TOWNSHIP, WASHINGTON
COUNTY, STATE OF PENNSYLVANIA, BEING LOT #102 IN THE DAUGHERTY PLAN OF
LOTS AS RECORDED IN THE RECORDERS OFFICE OF WASHINGTON COUNTY, IN
PLAN BOOK VOLUME 20 PAGE 773 AND BEING BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON A CONCRETE ROAD KNOWN AS PENNSYLVANIA ROUTE 88
WHICH POINT IS S. 78 DEG. 10' E., A DISTANCE OF 410.40 FEET FROM THE
INTERSECTION OF SAID CONCRETE ROAD AND LOT NUMBER 2 IN THE ABEL PLAN OF
LOTS RECORDED IN THE RECORDER OF DEEDS OFFICE OF WASHINGTON COUNTY, IN
PLAN BOOK VOLUME 20 PAGE 670 THENCE FROM SAID POINT OF BEGINNING ALONG
THE DIVIDING LINE OF PROPERTY OF TROY VIGNOLI, BEING LOT NUMBER 104 IN
THE DAUGHERTY PLAN OF LOTS S. 11 DEG 50' 00" W., 400.00 FEET TO A POINT
THENCE ALONG THE DIVIDING LINE OF LOT 102 IN THE DAUGHERTY PLAN OF LOTS,
N. 83 DEGREES 52' 38" W., 100.50 FEET TO A POINT THENCE ALONG THE
DIVIDING LINE OF LOT 102 IN THE DAUGHERTY PLAN OF LOTS N. 11 DEG. 50' 00"
E., 410.00 FEET TO A POINT OF THE PENNSYLVANIA ROUTE 88 THENCE ALONG THE
CENTER LINE OF SAID PENNSYLVANIA ROUTE 88, S. 78 DEGREES 10' E., A
DISTANCE OF 100.00 FEET TO A POINT, THE PLACE OF BEGINNING.


BEING THE SAME PROPERTY THAT RICHARD VIGNOLI AND SHERRY VIGNOLI, BY THEIR DEED
RECORDED 05/19/93 IN DEED BOOK VOLUME 2534, PAGE 439, GRANTED AND CONVEYED UNTO
RICHARD TROY VIGNOLI AND H. CLEMENT DAUGHERTY AND RUBY DAUGHERTY, THE GRANTORS
HEREIN. Kandi Vignoli joins in on this conveyance due to marriage
to Richard Troy Vignoli, a grantor herein.

with the appurtenances: TO HAVE AND TO HOLD the same to and for the use of the said Grantees, their heirs, successors, and assigns,

forever, And the Grantors for their heirs, successors,

and assigns hereby covenant and agree that they will WARRANT GENERALLY the property hereby conveyed.

NOTICE--THIS DOCUMENT MAY NOT/DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE/HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. [This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984, as amended, and is not intended as notice of unrecorded instruments, if any.]

Witness the hands and seals     of the said Grantor

Witness:

_Caroline Gralish_                    _Richard Troy Vignoli_
                                      RICHARD TROY VIGNOLI
_Carol Ann Gralish_                   _H. Clement Daugherty_
                                      H. CLEMENT DAUGHERTY
                                      _Ruby Daugherty_
                                      RUBY DAUGHERTY
                                      _Kandi Vignoli_
                                      Kandi Vignoli

NOTICE THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE(S) TO THIS NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, (IS, ARE) FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966, AS AMENDED 1980, OCT. 10, P.L. 874, NO. 156 ARTICLE 1.
WITNESS:

_Carol Ann Gralish_                   _Steve Levandosky_
                                      STEVE LEVANDOSKY
                                      _Linda Levandosky_
                                      LINDA LEVANDOSKY

Commonwealth of Pennsylvania )
                             )
County of _Allegheny_        ) ss.

        On this the 26th th day of _May_        , A.D. 1995,
before me, a notary public, the undersigned officer, personally
appeared RICHARD TROY VIGNOLI *AND H. CLEMENT DAUGHERTY AND RUBY
DAUGHERTY known to me (or satisfactorily proven) to be the persons
*and Kandi Vignoli          whose names are subscribed to the within instrument and
                            acknowledged that they executed the same for the purposes
                            herein contained

CAROL ANN GRALISH, Notary Public
City of Pittsburgh, Allegheny County

## Certificate of Residence

I, _the undersigned,_ do hereby certify that Grantees' precise residence is

Address: _P.O. Box 6 Finleyville PA 15332._

Witness my hand this _26th_ day of _May_ A.D. 1995.

## *Deed*

From Kandi Vignoli

RICHARD TROY VIGNOLI and/
AND H. CLEMENT
DAUGHERTY AND RUBY
DAUGHERTY

To

STEVE LEVANDOSKY AND
LINDA LEVANDOSKY,
HIS WIFE

Mail to:

Steve Levandosky
P.O. Box 6
Finleyville, PA 15332

Commonwealth of Pennsylvania )
                              ) ss.
County of _____          )

Recorded on this _____ day of
A.D. 19 ___, in the Recorder's office of the
said County, in Deed Book, Volume ____, page
____.

Given under my hand and the seal of the
said office, the day and year aforesaid.

_____
                      Recorder.

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

STEVE and LINDA LEVANDOSKY, Husband  :  CIVIL DIVISION
and Wife,                             :
                                      :  No.: 2016-2152
            Plaintiffs,               :
                                      :
v.                                    :
                                      :
ANDREW KOTELES and CRAIG DEAN         :
KOTELES,                              :
                                      :
            Defendants.               :

**WRIT OF POSSESSION**

COMMONWEALTH OF PENNSYLVANIA:

COUNTY OF WASHINGTON:

To the Sheriff of Washington County, Pennsylvania.

        (1)    To satisfy the judgment for possession in the above matter you are directed to
deliver possession of the following described property to STEVE and LINDA LEVANDOSKY,
Husband and Wife, Plaintiffs being (premises as follows):

See attached.

        (2)    To satisfy the costs *against the Defendants you are directed to* levy upon any
property of the Defendants and sell their interests therein.

                                              *Joy Schury Ranko*

                                              Prothonotary, Common Pleas Court
                                              of Washington County, Pennsylvania

                                              *Sandra D. Bedillion*
                                              By:

Dated: 9-20-17                                JOY SCHURY RANKO, PROTHONOTARY
        (SEAL)                                My Term Expires First Monday in January, 2020

Levandosky Land Description

All that certain lot or piece of ground situated in Union Township, Washington County, State of Pennsylvania, being Lot #102 in the Daughtery Plan of Lots as recorded in the Recorders Office of Washington County, in Plan Book Volume 20 Page 773 and being bounded and described as follows:

Beginning at a point on a concrete road known as Pennsylvania Route 88 which point is S. 78° 10' E ., a distance of 410.40 feet from the intersection of said concrete road and Lot Number 2 in the Abel Plan of Lots recorded in the Recorder of Deeds Office of Washington County, in Plan Book Volume 20 Page 670 thence from said point of beginning along the dividing line of property of Troy Vignoli, being Lot Number 104 in the Daughtery Plan of Lots S. 11° 50' 00" W., 400.00 feet to a point thence along the dividing line of Lot 102 in the Daughtery Plan of Lots, N. 83° 52' 38" W., 100.50 feet to a point thence along the dividing line of Lot 102 in the Daughtery Plan of Lots N. 11° 50' 00" E., 410.00 feet to a point of the Pennsylvania Route 88 thence along the center line of said Pennsylvania Route 88, S. 78° 10' E., a distance of 100.00 feet to a point, the place of beginning.

Address of Property:  6231 Route 88, Finleyville, PA 15332

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

| | |
|---|---|
| STEVE and LINDA LEVANDOSKY, Husband and Wife, | : CIVIL DIVISION |
| P.O. Box 6 | : |
| Finleyville, PA 15332 | : No.: 2017-4277 |
| | : |
| | : **RETURN OF SERVICE ON DEFENDANT** |
| Plaintiff, | : **ANDREW KOTELES** |
| | : |
| v. | : Filed on behalf of: |
| | : Plaintiffs |
| ANDREW KOTELES and CRAIG DEAN | : |
| KOTELES, | : Counsel of record for this Party: |
| 130 Demar Boulevard | : |
| Canonsburg, PA 15317 | : Dennis M. Makel, Esquire |
| | : Pa. I.D. # 40520 |
| Defendants. | : Christopher P. Furman, Esquire |
| | : Pa. I.D. # 89822 |
| | : MAKEL & ASSOCIATES, LLC |
| | : 98 East Maiden Street |
| | : Washington, PA 15301 |
| | (724)222-7639 |



IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

| | |
|---|---|
| STEVE and LINDA LEVANDOSKY, Husband and Wife, | : CIVIL DIVISION |
| | : |
| | : No.: 2017-4277 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ANDREW KOTELES and CRAIG DEAN KOTELES, | : |
| | : |
| Defendants. | : |

## **RETURN OF SERVICE**

AND NOW, come the Plaintiffs, Steve and Linda Levandosky, by and through their undersigned counsel, Makel & Associates, LLC, and file this Return of Service averring as follows:

1.     On October 2, 2017, Pennsylvania State Constable, Mark Gordon served Defendant Andrew Koteles with a Notice Under Rule 2973.2 of Judgment and Execution by hand delivery at his place of business at Drew's Garage, 6231 Rt. 88 Finleyville, PA 15332 at approximately 10:30 a.m. See Affidavit of Mark Gordon attached hereto as **Exhibit A.**

Christopher P. Furman
Makel & Associates, LLC
98 E. Maiden Street
Washington, PA 15301
(724) 222-7639
*Counsel for the Plaintiffs*

## AFFIDAVIT OF SERVICE

**BEFFORE ME**, a Notary Public, personally appeared Mark Gordon, a Pennsylvania

State Constable, who, being duly sworn according to law, deposes and says that on October 2,

2017, a Notice Under Rule 2973.2 of Judgment and Execution was hand delivered to Craig Dean

Koteles at Drew's Garage, 6231 Rt. 88 Finleyville, PA 15332 at approximately 10:30 a.m.

_____
Mark Gordon

SWORN and SUBCRIBED before me this _2ⁿᵈ_ day of _October_, 2017

_____
Notary Public

My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nancy P. Zavatski, Notary Public
City of Washington, Washington County
My Commission Expires May 19, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

2

## REAL ESTATE APPRAISAL

**Andrew Koteles**
**6231 Route 88**
**Union Township**
**Finleyville, PA  15332**

## PREPARED BY:

**MERICO LIGNELLI**
**P.O. BOX 182**
**MONONGAHELA, PA  15063**

# MERICO S. LIGNELLI

*Real Estate and Appraisals*

P.O. BOX 182
7TH & WEST MAIN STREET
MONONGAHELA, PA 15063-0182
PHONE: 724-258-4141 • 724-258-3430
FAX: 724-258-6576
e-mail: riclignelli@comcast.net

September 28, 2020

Justin P. Schantz, Esquire
David A. Colecchia and Associates
324 South Maple Avenue
Greensburg, PA  15601-3219

RE:    PROPERTY APPRAISAL:
       6231 Route 88, Union Township
       Finleyville, PA  15332

Dear Attorney Schantz:

      I have personally inspected the Subject Property for the purpose
of establishing the Fair Market Value.  I have no interest now or
anticipated in the Subject Property nor is my fee based on the value
appraised.

      By reasons of my investigation and other data contained in this
report and my experience in the Real Estate and Appraisal Business, it
is my opinion as of September 17, 2020, the Market Value of the Subject
Property is:

      FOUR HUNDRED SIXTY-EIGHT THOUSAND AND NO/100 DOLLARS
                     ($468,000.00)

      I refer you to the data, from which, this value conclusion
was derived.

                              Respectfully submitted,

                              MERICO LIGNELLI
                              Pennsylvania Certified General Appraiser
                              GA-000124-L

ML/lk

## APPRAISAL SUMMARY

**PURPOSE OF THE APPRAISAL**
The Purpose of the Appraisal is to provide an Opinion of the Market
Value of the Fee Simple Estate of Real Estate Only.

**TYPE**
This is a Restricted Use Appraisal.

**INTENDED USE OF THE APPRAISAL**
The Intended Use of this Appraisal is for Pending Litigation.

**INTENDED USER OF THE APPRAISAL**
The Intended User of this Appraisal is my Client, Andrew Koteles & his Assigns.

**PROPERTY APPRAISED**
6231 Route 88 (Union Township), Finleyville, Washington County, Pennsylvania
15332

**DATE OF VALUE**
September 17, 2020

**OWNERS**
Steve & Linda Levandosky

**DEED REFERENCE**
Deed Book Volume 2695 Page 188

**TAX PARCEL NUMBER**
640-002-00-00-0009-06

**ZONING**
C-1 Local Commercial District

**HIGHEST AND BEST USE**
Continued Use, As Improved

**ASSESSED VALUE AND TAXES**
$153,800                $2,727

**CENSUS TRACT**
7712.00

**COMMUNITY FLOOD INFORMATION**
Township of Union
Community Panel Number 42125C0220E
Dated – September 30, 2015
Zone – X

**EXPOSURE TIME**
60 to 180 Days

**SALES HISTORY**
The Owners, on November 6, 2007, agreed to an Article of Agreement Sale to
Andrew & Craig Dean Koteles.  The agreed Sale Price is $650,000.

**APPRAISAL HISTORY**
The Appraiser has not appraised the Subject Property prior to this Appraisal.

**SCOPE**
The scope of work completed in developing the value estimate included the
following:
A personal inspection of the Subject Property
An examination of economic and demographic factors on both local and regional
bases.
A Highest and Best Use analysis considering the legal, physically possible and
feasible uses of the Subject Property, both as vacant and as presently improved.
Research of comparable land sales and commercial land sales within the market
area.
Development of valuation analyses considering the Sales Comparison Approach to
Value.
Reconciliation of value indicators and final value estimate.

**COMPETENCY PROVISION**
The Appraiser has appraised many commercial properties for over the past 35
years.


This Appraisal is consistent with Professional Standards set forth by the
Uniform Standards of Professional Appraisal Practice, issued by the Appraisal
Standards Board of the Appraisal Foundation.

## ASSUMPTIONS AND LIMITING CONDITIONS

This Appraisal is subject to the following assumptions and limiting conditions:

No responsibility is assumed for matters of a legal nature.  Title to the property is assumed to be marketable.  The property has been appraised as though free and clear of all liens and encumbrances, except as otherwise noted herein.

The description of the physical condition of the improvements is based on an inspection of those portions of the improvements visible and accessible.  No engineering tests were made of soil conditions, structural members, or building service systems.  No opinion is being made with respect to the existence of hazardous or toxic materials.  No opinion is made as to the compliance with the Americans with Disabilities Act (ADA).

All plats, diagrams, and illustrations are intended as aids in describing the subject property or related data and are not meant as references in matters of survey.

The allocation of the total valuation between land and improvements applies only under existing programs of utilization.  This appraisal and the separate allocations to the land and improvements are not to be used with reference to any other appraisal and are invalid if so used.

It is understood that the appraiser will not be required to give testimony or appear in court by reason of this appraisal unless prior arrangements have been made.

Disclosure of the contents of this appraisal report is governed by the By-Laws and Regulations of the Appraisal Institute.

Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser or the firm with which he is connected, or any reference to the American Institute of Real Estate Appraisers or to the M.A.I. designation) shall be disseminated to the public through advertising, public relations, news, sales media, or any other public means of communication without prior written consent and approval.

No responsibility is assumed for the accuracy of information furnished by others and believed to be reliable and correct.

## DEFINITION OF MARKET VALUE

Market Value is defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1.   buyer and seller are typically motivated;

2.   both parties are well informed or well advised and acting in what they consider their best interests;

3.   a reasonable time is allowed for exposure in the open market;

4.   payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and

5.   the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Source:   Uniform Standards of Professional Appraisal Practice, as promulgated by the Appraisal Standards Board of The Appraisal Foundation.

## HIGHEST AND BEST USE

Property value is based on the concept of Highest and Best Use of the land.  Highest and Best Use is defined as that possible and legal use or employment which will preserve the utility of the land and yield a net income flow that forms the highest present value of the land when capitalized at the property's market interest rate.

A given parcel of land may be available for alternative and competitive uses, but a site can only have one Highest and Best Use at one time.  In this report, the date of the Appraisal is the time frame in which a property's Highest and Best Use has been determined.

In estimating Highest and Best Use following property analysis, the Appraiser goes through four (4) considerations, which have been referred to below.

1.    Possible Use - What uses are physically possible on the Subject site or in the Subject improvements, given the physical characteristics revealed by property analysis.

2.    Permissible Use - What uses are permitted under existing zoning and other land use regulation and controls, and under existing deed restriction, for the Subject Property.

3.    Feasible Use - Among legally permitted and physically possible uses for the Subject Property, which are appropriate, given the characteristics revealed by market, neighborhood, and property analysis?  Which uses produce any net return the owner, or a positive net present value.

4.    Highest and Best Use - Among appropriate or feasible uses for the Subject Property, which will produce the highest and present value.

In summarizing these definitions we find several tests that must be passed in determining highest and best use:

1. The use must be legal
2. The use must be within the realm of probability; that is, it must be likely, not speculative or conjectural.
3. There must be demand for such use.
4. The use must be profitable.
5. The use must be such as to return to land the highest net return.
6. The use must be such as to deliver the return for the longest period of time.

## HIGHEST AND BEST USE AS VACANT

A Site is always valued as though vacant in terms of its Highest and Best Use, even though the property may be improved. In order to make the above mentioned tests, the appraisers must be qualified to measure the several important elements in finding the highest and best use.  The Appraiser must have:

1. A thorough knowledge of the property.

2. A knowledge of the community and its history.

3. A knowledge of the principles of land utilization and
   Property utilization.

When considering the highest and best use of the vacant land, the Appraiser must consider the following: availability, adaptability, need, and relationship of the theoretical highest and best use to the other uses to which the property might be put.

We often hear the term "highest and best available use."  This availability may be dependent upon many things.  It may depend upon zoning, for instance; or the existence of certain buildings and improvements which are of such nature as to make it practically unavailable for any use not consistent with these improvements.  The adaptability of the land to the highest and best use-or any particular use under consideration-must, of course, be studied.  The studies should include the other characteristics of the land as well as the general area; and certainly, any examination of the highest and best use must be closely related to the need for such use.

## DESCRIPTION OF THE IMPROVEMENTS

The improvements consist of two (2) commercial buildings used as an automobile repair/service garage.

### Building #1 Main Building

The Subject consists of a concrete block building with a brick front constructed in 1987 and containing 2,400 square feet with an attached steel storage area to the rear containing 1,600 square feet for a total of 4,000 square feet.  Both areas have shingle covered gable roofs.  The block area contains four (4) garage doors, three 10 foot and one 12 foot high.  This area contains 150 square feet of finished area consisting of an office and powder room.

The heat is provided by two (2) wall mounted gas Reznor heaters. The front area has a concrete floor.  The metal addition, which is unheated, has a gravel floor and has two (2) 10 foot garage doors for access.
Electrical service is three phase 200 Amp entrance.

### Condition

The building is in average condition but the roof has reached the end of its economic life and electric heaters must be used in the office and powder room.

Also the lack of a concrete floor in the metal storage area of 1,600 square feet is a drawback limiting the use to storage.

### Building #2 Auxiliary Building (used for storage)

Located at the rear of the site is a steel building containing 1,200 square feet constructed in approximately 2003.  The pre-fabricated building contains a concrete floor and two overhead garage doors 10 feet high.  This storage building has a 200 Amp electrical entrance and is unheated.

### Condition

The Subject is in average condition.

### READERS NOTE:

Building #1 contains four (4) hydraulic lifts that are the buyers

personal property and were not considered a fixture nor were considered

in the Market Value arrived at by this Appraisal.

## SITE DESCRIPTION

The Subject is situated on a site fronting Route 88, 100 feet and extending back a distance of approximately 400 feet.  The level rectangular site is services by all public utilities.

The site is fenced from Building #1 by a 6 foot cyclone fence with a 1 foot barb wire top.  The front and rear of the property is a gravel parking area.

The Subject is located approximately 1 mile north of Finleyville Borough and approximately 1 mile south of South Park and the Allegheny County line.

The neighborhood is made up of approximately 10 commercial properties along Route 88, from a Dari-Queen to the south and Trax Farms to the north.

Public transportation is available along Route 88.

## Direct Sales Comparison Approach

It is the Direct Sales Comparison Approach which can provide a direct
measure of behavior of typical purchasers and sellers in the relevant
marketplace.  The approach requires a search within the market for
sales of properties considered comparable to the subject, as improved.
However, selected sales for comparison typically differ from the
subject with respect to various factors.

As a result, each comparable as it existed at the time of sale must be
compared to the subject and analyzed with respect to selected factors
which may have materially affected the achieved unit prices of each.

Needed adjustments regarding each factor are applied to each comparable
reflecting the differences between each comparable and the subject.
Selected factors of comparison include the following:

1. **Real Property Rights**
   Includes adjustments for fee simple, leasehold, leased fee, and
   partial interests.

2. **Financing Terms:**
   Includes adjustments for assumption of existing financing at
   favorable rates and/or seller financing.

3. **Conditions of Sale**
   Provides an adjustment reflecting any extraordinary motivation
   of the buyer or seller, which can be viewed as materially
   affecting the actual consideration paid.

4. **Market Conditions (Time of Sale):**
   This reflects changes in market conditions over time.  One
   determines if unit prices of properties similar to the subject
   have increased, decreased or remained the same.

5. **Location of Property:**
   This is to reflect any significant difference between the
   comparable and the subject with regard to their respective
   locations.  Consideration is given to proximity to the market
   area and major highways.

6. **Physical Characteristics:**
   This reflects any difference between the comparable and the
   subject with regard to certain physical characteristics inherent
   in each.  Consideration is given to size, shape, design,
   topography, condition of site at time of sale, availability of
   utilities, zoning, entitlements, access and exposure to
   roadways, traffic counts, geotechnical conditions, easements and
   rights-of-way, water frontage, and extraordinary impairments.

## SALES COMPARISON APPROACH
## COMPARABLE SALE

**1.**

**GRANTOR:**          Kathleen McKenzie

**GRANTEE:**          Ronald Jr. & Julie L. Wulff

**LOCATION:**         3571 Finleyville Elrama Road, Union Tp.
                      Finleyville

**DATE:**             March 6, 2019

**DEED REFERENCE:**   201904733

**PARCEL NUMBER:**    640-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-00

**CONSIDERATION:**    $315,000

**DESCRIPTION:**      A (4) bay auto repair garage built in 1980 &
                      containing 3,120 SF with small office & powder
                      room, included was four (4) hydraulic lifts & a
                      storage container.  There was also a two (2)
                      car detached garage that was in very poor
                      condition. The seller held the mortgage for the
                      property with $40,000 down payment & a 5 year
                      balloon payment. The lot consisted of two
                      parcels together containing .99 acre.

**SALE PRICE/SF:**    $100.96



## SALES COMPARISON APPROACH
## COMPARABLE SALE

2.

**GRANTOR:**      Joseph M. Bowers

**GRANTEE:**      Joseph & Shari H. Norton

**LOCATION:**      3740 Brownsville Road, Union Township
Finleyville

**DATE:**      October 25, 2018

**DEED REFERENCE:**      201826885

**PARCEL NUMBER:**      330-002-00-02-0005 & 0001

**CONSIDERATION:**      $235,000

**DESCRIPTION:**      Warehouse with small office area containing
a total of 7,356 SF, Land area of approximately
10,000 SF. Inferior in condition, location and
land area.

**SALE PRICE/SF:**      $31.95



330-002-00-02-0005-00  03/31/2014

## SALES COMPARISON APPROACH
## COMPARABLE SALE

**3.**

| | |
|---|---|
| **GRANTOR:** | Daniel K. Mulkern |
| **GRANTEE:** | Finleyville Borough |
| **LOCATION:** | 3753 First Avenue<br>Finleyville |
| **DATE:** | March 1, 2017 |
| **DEED REFERENCE:** | 201706107 |
| **PARCEL NUMBER:** | 330-002-00-02-0011-00 |
| **CONSIDERATION:** | $151,200 |
| **DESCRIPTION:** | Garage/warehouse built in 2012 containing a total of 2,280 SF, Inferior in location with minimal exposure. |
| **SALE PRICE/SF:** | $66.32 |



330-002-00-02-0011-00  03/31/2014

## CORRELATION AND VALUE CONCLUSION

The Appraisal developed the following indications of Market Value of the Subject Real Estate in its "As Is" condition.

| | |
|---|---|
| **Cost Approach** | **Not Applicable** |
| **Sales Comparison Approach** | $468,000 |
| **Income Approach** | **Not Applicable** |

The Cost was judged not to be applicable in light of the age of the buildings which reduces the effectiveness of the estimate of accrued depreciation.  It was concluded that the Cost Approach would not produce a reliable estimate of Market Value.

In this market, free standing single occupant properties are typically purchased for owner-occupancy as opposed to income producing properties by investors.  Due to the lack of rental information, income and expense figures would be estimated and in my opinion, a reliable value indication could not be produced by an Income Approach.

The Sales Comparison Approach looked at thee (3) Comparable Sales in the Subjects immediate market area.  Of the sales data, the Subject is concluded to be most similar to Sale No.1 with regard to building size, age and land area.

Based on the Sales Comparison Approach, it is my opinion that the Subject's Market Value is $90 per Square Foot of building area including the land.  The total building area is 5,200 Square Feet or:

**5,200 SF x $90.00 = $468,000**

**CERTIFICATION**

I certify that to the best of my knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analysis, opinion, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinions, and conclusions.

3. I have no (or the specified) present of prospective interest in the property that is the subject of this report, and I have no (or the specified) personal interest or bias with respect to the parties involved.

4. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.

5. This Appraisal was not based on a requested minimum valuation, or the approval of a loan.

6. My analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice.

7. I have made a personal inspection of the property that is the subject of this report.

8. No one provided significant professional assistance to the person signing this report.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirement of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. As of the date of this report, I have completed the requirements of the continuing education program of the Appraisal Institute.

September 28, 2020

Merico Lignelli
Pennsylvania Certified General Appraiser
GA-000124-L

# **A D D E N D A**



**SUBJECT PROPERTY**
**FRONT BUILDING #1**



**REAR OF BUILDING #1**









**STREET - NORTH**

Exhibit "C", consisting of
31 pages

Respondent's Exhibits, page 47



**ROOF BUILDING #1**



**INTERIOR OF BUILDING #1**



**OFFICE**



**ONE OF HEATING UNITS**





**BUILDING #2**
**FRONT**

Exhibit "C", consisting of
31 pages

Respondent's Exhibits, page 50







**INTERIOR BUILDING #2**



**STREET-SOUTH**

Exhibit "C", consisting of
31 pages
Respondent's Exhibits, page 52





Exhibit "C", consisting of
31 pages                          Respondent's Exhibits, page 53

## Location Map

| Owner | Steve & Linda Levandosky | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6231 Route 88 | | | | | | |
| City | Finleyville | County | Washington | State | PA | Zip Code | 15332 |
| Client | Andrew Koteles | | | | | | |



## QUALIFICATIONS OF MERICO S. LIGNELLI, JR.

| | |
|---|---|
| P.O. Box 182 | Age:     61 Years Old |
| 7th & West Main Street | Phone:   (724)258-4141 |
| Monongahela, PA  15063 | Fax:     (724)258-6576 |
| Email: riclignelli@comcast.net | Tax ID:   25-1875010 |

| | |
|---|---|
| May 2006 to<br>April 2012 Resigned | Hearing Officer for Allegheny County Appeal Board for Commercial and Industrial Appraisals. |
| October 1999 to<br>December 1999 | Appointed to the Washington County Board of Appeals |
| January 1997 to<br>December 2000 | Member of Board of Directors of the Mon Valley Board of Realtors |
| January 1996 to<br>2005 | Staff Appraiser for Redevelopment Authority of the County of Washington, Pennsylvania. |
| January 1977 | Successfully completed Real Estate Funda-mentals and Real Estate Finance Courses at Cook Real Estate School, Pittsburgh, Pa. |
| October 1978 to<br>December 1978 | Successfully completed Real Estate Office Management Course at Robert Morris College Pittsburgh, Pennsylvania |
| May 1979 | Successfully completed American Institute Of Real Estate Appraisers (MAI) Course Appraisal Principals Memphis State University, Memphis TN |
| December 1979 | Successfully completed American Institute Of Real Estate Appraisers Course VII, University of Tampa, Florida |
| July 1994 | Successfully completed The Society of Real Estate Appraisers Course #201, Principals of Income Property Appraising at Penn State University, State College, Pennsylvania |
| April 1986 | Successfully completed American Institute of Real Estate Appraisers (MAI) Litigation Valuation Course at Atlanta, Georgia |
| October 1992 | Successfully completed Hotel/Motel Valuation Seminar at Pittsburgh, Pennsylvania |
| August 1994 | Successfully completed Understanding of Limited Appraisal Reporting |

Licensed Real Estate Salesman Merico S. Lignelli Real Estate and
Insurance, Monongahela, Pennsylvania, Full-time from October 1977 to
August 1981.  Duties include selling, leasing, and managing Real
Estate

Licensed Real Estate Broker Full-time from August 1981 to Present.
Duties included are the same as above with most emphasis
on the appraising of residential, multi-family, commercial and
industrial properties.

Certified General Appraiser Full-time from July 1991.  Certification
Number GA-000124-L.  Also currently a candidate for the SRA Designation of
The Appraisal Institute.

Principal Clients: cfsbank, Community Bank, Mon Valley Community Federal Credit
Union, Valley 1st Federal Credit Union, Belle Vernon Area Federal Credit Union,
Consolidated Coal Company, Eighty Four Mining Company, and numerous Attorneys
Throughout Allegheny, Fayette, Washington and Westmoreland Counties.



## APPRAISER STATEMENT

"Where applicable, based on report for or type utilized, the appraiser has made a visual inspection of what is readily apparent.  The appraiser has not moved, relocated or otherwise performed an intrusive or invasive inspection. The appraiser's 'inspection' is not to be considered to be the same as a home inspection by a home inspection expert, contractor, or tradesman.  The appraiser has not tested any system such as electrical, plumbing, heating/ air conditioning.  If requested, or if appropriate, the appraiser may have turned on lighting for photo taking, or flushed toilets to observe function. The appraiser will only report what was observed."

"The appraiser is not an expert in environmental hazards or conditions and is not qualified to comment on such matters.  The appraiser has only general knowledge in matters relating to soil, structural, or other engineering matters and cannot comment on such matters."